UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVID W. SVETE,

                         Plaintiff                      Case No. 2:07-CV-156
                                                    District Judge Sargus
    vs.                                               Magistrate Judge King

HOWARD F. WUNDERLICH, M.D., ET AL.,

                         Defendants

OPINION AND ORDER

Plaintiff David W. Svete (Svete or Plaintiff) first sought leave to proceed in forma pauperis in this case on February 26, 2007, which leave was then granted by the Magistrate Judge and the original Complaint, consisting of some 45 pages and 330 paragraphs, filed on April 4. Docs. 4, 7. In it Svete asserted that he is a Texas resident presently incarcerated as a federal prisoner in Ohio, having been convicted in a Florida federal court on fraud and conspiracy charges related to losses suffered by certain individuals and financial institutions in connection with the activities of a corporation founded by Svete (LifeTime Capital, Inc. or LCI) dealing in so-called "viatical" or "life settlement" life insurance polices.[1] The Defendants here were three physicians, Howard F. Wunderlich, M.D., Isaac Corney, M.D., and Rani Whitfield, M.D., the former two allegedly residents of Ohio, and the latter allegedly a resident of Louisiana (Doc. 7, p.2), each of whom allegedly had contracted with LCI

---

1. See Doc. 7, pp. 3, 15-16 and Case # 3:04 cr10-001/MCR., United States District Court, Northern District of Florida, Pensacola Division.

and Svete certain advisory services (Doc. 7, p.4) and each of whom had testified at Svete's criminal trial (Doc. 7, p.15).  (Defendant Corney has since been voluntarily dismissed  (Docs. 61, 63) and is no longer included in any reference to Defendants herein)

In its original form, the Complaint made eleven separate claims for civil damages and, in one case, injunctive relief, all based on, or in one way or another related to, physician retainer agreements allegedly executed by each of the defendants with another corporation, Medical Underwriting, Inc.(or MUI) or its successor Medical Underwriting, LLC (or MUL), "established to administrate the medical underwriting process" of LCI.  Doc. 7, p.4, ¶¶ 16, 18.  Plaintiff alleged that he was a "Consultant" to both.  Id., ¶19.

On May 15, 2007, Defendant Wunderlich filed an Answer to the Complaint (Doc. 13) specifically identifying, among others, defenses based on failure to state a claim upon which relief may be granted, applicable statutes of limitations, waiver and estoppel, mandatary arbitration, and, in effect, lack of standing.  Id., pp. 22-24. Later, on June 15, Defendant Wunderlich filed a Motion For Judgment On The Pleadings pursuant to Rule 12(c), Fed. R. Civ. P. (Doc. 17), further arguing several of these defenses to Plaintiff's Complaint.  Meanwhile, after obtaining an extension of time to answer (Doc. 11), Defendant Whitfield, on June 11, elected instead to file a motion pursuant to Rule 12(b)(6) to have the Complaint dismissed (Docs. 15, 16) based on essentially the same claimed deficiencies and arguments as those presented by Defendant Wunderlich's Answer and motion.

Thus apprised of various possible shortcomings of his Complaint, Plaintiff sought, and eventually obtained, authority for filing of an amended complaint.  See Opinion and Order, Doc. 56, 1-4-08.  This First Amended Complaint (Doc. 22) is a substantially shortened and partially re-worded version of the original, containing only seven of the original's 12 claims for relief[2], but now also attaching a lengthy affidavit of the Plaintiff (Ex. A) as well as copies of the two remaining Defendant's Physician Retainer Agreements here in question (Exs. B-2, B-3).  The case is now before the Court for consideration of those two Defendant's motions to dismiss (Docs. 38 and 60) together with the voluminous arguments[3] and related materials submitted by the parties in support and opposition (See Docs. 68, 77, 78, 87, 90.)

A motion to dismiss pursuant to Rule 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant.  Schuer v. Rhodes, 416 U.S. 232, 236 (1974); Mayer v. Mylod, 988 F.2d 635, 637 (6th Cir. 1993).  However, a complaint must contain "either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory" (Weiner v. Klais

---

2. Viz., 1) breach of contract; 2) negligence; 3) negligent misrepresentation; 4) breach of fiduciary duty and trust duty; 5) unfair and deceptive trade practices; 6) enforcement of indemnification and hold harmless agreements; and 7) injunctive relief.

3. Svete has been permitted at least 97 pages of argument respecting Defendant Wunderlich's motion, alone (see Docs. 68, 87), which exceeds by some 77 pages the 20 pages normally permitted under this Court's local rules without a detailed summary (itself limited 5 pages) or leave of court, which Svete did obtain.  S. D. Ohio Civ. L. R. 7.2(a)(2),(3).

and Co., Inc., 108 F.3d 86, 88 (6th Cir. 1997)), and a court is not required to accept a plaintiff's summary allegations or unwarranted legal conclusions. Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir.1999), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)  While a court may not grant a Rule 12(b)(6) motion based on mere disbelief of a complaint's factual allegations (Lawler v. Marshall, 898 F.2d 1196, 1199 (6th Cir. 1990)), neither is a court required "to accept as true [a complaint's] legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987).

Generally, matters outside the pleadings are not to be considered in ruling on a Rule 12(b)(6) motion to dismiss. See Weiner at 88 (citing Hammond v. Baldwin, 866 F2d 172, 175, (6th Cir. 1989)). If such matters are considered, the rule expressly provides that the motion shall be treated as being for summary judgment under Rule 56. However, this does not apply to matters of which a court may properly take judicial notice. See discussion below, pp. 9 n.10, 11. Further, it should be noted that pursuant to Rule 10(c), "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes," and, beyond that,

> .... Documents attached to a motion to dismiss are considered part of
> the pleadings if they are referred to in the plaintiff's complaint and are
> central to plaintiff's claim.

Jackson at 745 (citing Weiner at 89), see Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." Weiner at 89; see Pension Benefit Guaranty

Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3rd Cir. 1993).

In the memoranda supporting their motions to dismiss, both of the Defendants first urge the res judicata/collateral estoppel effect of Plaintiff's criminal conviction in Florida as a bar to his proceeding against them in this case.[4]  In this diversity case seeking to enforce rights under state civil law, the Court applies federal procedural law (such as that set out above applicable to its consideration of the Rule 12(b)(6) motions); but it applies the substantive law of the State of Ohio as interpreted by its highest court's adjudications of such state law claims.  See Hanna v. Plumer, 380 U.S. 460, 465 (1965);  Northland Ins. Co. v. Guardsman Products, Inc., 141 F.3d 612, 617 (6th Cir. 1998); Imperial Hotels Corp. v. Dore, 257 F.3d 615, 620 (6th Cir. 2001).[5]  Thus, as recognized recently by District Judge Rice in Plaintiff Svete's legal malpractice action in another court of this district, because state law rights rather than federal civil rights under 28 U.S.C. §1983 are in issue here, the rule of  Heck v. Humphrey, 512 U.S. 477, 488 (1994), that "[s]tate courts are bound to apply federal rules in determining the preclusive effect of federal-court decisions on issues of federal law," does not apply, and the existence of Svete's federal conviction does not necessarily preclude his proceedings here under state civil law.  See

---

4. Although not identical, the arguments of Defendants' memoranda are similarly subdivided and otherwise so parallel that they are generally treated together in this Opinion.

5. "If the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it.  If the state appellate court announces a principle and relies upon it, that is a datum not to be disregarded by the federal court unless it is convinced by other persuasit data that the highest court of the state would decide otherwise."  Clutter v. Johns-Manville Sales Corp., 646 F.2d 1151, 1153 (6th Cir. 1981) (quoted in Northland Ins. Co. at 617).

Svete v. Cherneskey, Heyman & Kress, S.D. Ohio No. 3:07cv197, Doc.8, Decision

and Entry, 2-4-08.  This Court agrees with the analysis of the Common Pleas Court

of this county in ruling on state civil proceedings in that court by a convicted felon

directly related to his conviction in this district court.[6]

> . . . . [T]he real question [here] is the effect of that federal conviction in
> adjudicating [Plaintiff's} purely state-law claim.  In this court's view,
> the state law of collateral estoppel determines how to treat the federal
> conviction for state tort-law purposes.  As to that, *Heck* offers no guid-
> ance..

Blackwell v. Gorman, 142 Ohio Misc.2d 50, 62, 870 N.E.2d 1238, 1248 (Ohio Com.

Pl., 2007) (cited with approval in the Svete v. Cherneskey ruling noted above).

This state's basic law of collateral estoppel was recently explained by the

Ohio Supreme Court in Glidden Co. v. Lumbermens Mut. Cas. Co., 112 Ohio St.3d

470, 478, 861 N.E.2d 109, 118 (2006):

> "The doctrine of issue preclusion, also known as collateral es-
> toppel, holds that a fact or a point that was actually and directly at
> issue in a previous action, and was passed upon and determined by a
> court of competent jurisdiction, may not be drawn into question in a
> subsequent action between the same parties or their privies, whether
> the cause of action in the two actions be identical or different." *Fort*
> *Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.* (1998), 81
> Ohio St.3d 392, 395, 692 N.E.2d 140; see, also, *Norwood v. McDonald*
> (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph three
> of the syllabus.  Essentially, collateral estoppel prevents parties from
> relitigating facts and issues that were fully litigated in a previous case.
> *State ex rel. Shemo v. Mayfield Hts.* (2002), 95 Ohio St.3d 59, 64, 765
> N.E.2d 345.

In a case with res judicata circumstances closer to those presented here in that

---

6. See United States v. Blackwell, 459 F.3d 739 (6th Cir. 2006), upholding that plaintiff's con-
viction.

there was no mutuality of parties, the Cuyahoga County Court of Appeals has

further ex-plained application of this doctrine as follows:

> Res judicata consists of two related concepts – claim-preclusion and issue-preclusion, otherwise known as collateral estoppel. The collateral estoppel aspect precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action, even where the cause of action is different in a subsequent suit. *Fort Frye Teachers Assoc., OEA/NEA v. State Empl. Relations Bd., et al.*, 81 Ohio St.3d 392, 1998-Ohio-435. Although issue preclusion generally requires mutuality of parties, the Ohio Supreme Court has adopted a "relaxed" mutuality standard and held that issue preclusion applies unless the party lacked a full and fair opportunity to litigate or the circumstances or justice requires relitigation. *Hicks v. De La Cruz* (1977), 52 Ohio St.2d 71.

Marc Glassman, Inc. v. Fagan,, 2006-Ohio-5577, 2006 WL 3028419, *2, n.2 (Ohio

App. 8th Dist.). Thus, under Ohio law it is theoretically possible that issue-pre-

clusion based on Svete's federal criminal conviction might be applied to bar one

or more of his claims in this case.[7] Cf., White v. Suster, 101 Ohio St.3d 212, 2004-

Ohio-719, 803 N.E.2d 813 (per curiam); Wloszek v. Weston, Hurd, Fallon, Paisley &

Howley, LLP,, 2004-Ohio-146. 2004 WL 64947, *6 (Ohio App. 8th Dist.) (following

federal decisions in concluding that re-litigation by plaintiff in a state civil action

of an issue previously determined adversely to her as the defendant in a federal

---

7. At this time, it is irrelevant that Svete's criminal conviction is currently pending on appeal. "It is well-settled that the pendency of an appeal does not prevent the judgment's effect as res judicata in a subsequent action. *King Steel Sales Corp. v. Hanover Steel Corp.* (Dec. 19, 1983), Cuyahoga App. No. 46762, unreported [available on WEST-LAW, 1983 WL 2926]; *Ashley v. Ashley* (1962), 118 Ohio App. 155, 160, 25 O.O.2d 13, 16, 193 N.E. 2d 535, 539; *Armstrong v. Armstrong* (1954), 99 Ohio App. 7, 13, 58 O.O. 79, 82, 130 N.E.2d 710, 715. If the federal judgment is reversed on appeal, appellant's remedy would be by motion for relief from judgment pursuant to Civ. R. 60(B)(4). *King Steel Sales Corp., supra.*" Cully v. Lutheran Medical Center, 37 Ohio App.3d 64, 65; 523 N.E.2d 531, 532 (Ohio App.,1987).

criminal proceeding was barred, whether the prior determination was based on a jury verdict or a guilty plea). (Both cases relied on in Blackwell v. Gorman,, 142 Ohio Misc.2d at 65-66, 870 N.E.2d at 1250-51).

Even if theoretically possible, however, limitations on what a court may consider in ruling on a Rule 12(b) motion to dismiss (or for judgment on the pleadings) make it at least difficult to present an issue-preclusion defense by such a motion in a complex case, and for reasons discussed further below, it is clear that has not so far been accomplished in ths one. As also noted in the Marc Glassman, Inc. ruling quoted above (2006 WL 3028419, *2, n.2), the Ohio Supreme Court has apparently held under Ohio procedural rules, that the defense is properly asserted only by motion for summary judgment (see State ex rel. Freeman v. Morris, 62 Ohio St.3d 107, 109 (1991)); and the Ohio law of issue-preclusion is found almost exclusively in cases ruling in that context.[8]

Although in this case, the Court is not bound by the state's procedural rule, and, as discussed further below (see note 10), federal procedure might permit a more detailed examination here of the issues actually resolved in Svete's federal conviction in Florida, in any such examination the Court is still bound to apply its understanding of the state's substantive law respecting proper application of issue preclusion. Thus, the Court would be required to find a basis for concluding that his criminal case "actually and necessarily litigated and determined" adversely to Svete some issue or issues necessary to his proceeding successfully on one or more

---

8. Cully v. Lutheran Medical Center, quoted in the footnote above, is the sole exception of which the Court is aware.

of the claims presented in this civil case.[9]   Whether that might be done by ex-

amination of the Amended Judgment in Svete's criminal case (which is before the

Court as Exhibit 1 to Defendant Whitfield's motion to dismiss (Doc. 38), together

with the wording of the specific counts of the indictment[10] on which Svete was thus

convicted (which has *not* so far been submitted for the Court's consideration), it is

clear that such a ruling cannot be made at this point in this case.

In both arguments in support of their motions to dismiss, Defendants rely in

part on various allegations contained in Svete's original Complaint (Doc. 7) but not

included in his First Amended Complaint (Doc. 22).  See, e.g. Doc. 38, pp. 1-2, 11;

Doc. 60, pp. 2-4, 8.  Svete objects to the Court's consideration of those original plea-

dings on these motions to dismiss the First Amended Complaint  (see, e.g. Doc. 68,

pp. 11-14; Doc. 77, pp.7, 11-14), arguing that to do so necessarily converts those

motions into motions for summary judgment.  In the circumstances of this case,

however, the Court is persuaded that it is appropriate to do so, especially where the

---

9. Noting that the estoppel "extends only to questions directly put in issue and
directly determined in the criminal prosecution," the Wloszek opinion concludes
that "the trial court in the subsequent civil proceeding must examine the record to
determine exactly what was decided in the criminal proceeding."  2004 WL 64947
at *5 (internal quotations marks and footnotes omitted)

10. The court can consider public records in ruling on a Rule 12(b)(6) motion. Jack-
son v. City of Columbus, supra at 745; Helfrich v. Metal Container Corp., 102 Fed.
Appx. 451, 452, 2004 WL 1325690, *2 (6th Cir. 2004)  "Courts have defined a pub-
lic record, for purposes of what properly may be considered on a motion to dismiss,
to include criminal case dispositions such as convictions or mistrials, see *Collins v.
County of Kendall, Ill.*, 807 F.2d 95, 99 n. 6 (7th Cir.1986), *cert. denied*, 483 U.S.
1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987)." Pension Ben. Guar. Corp. v. White
Consol. Industries, Inc.  998 F.2d 1192, 1197 (3rd Cir,1993);

amended  pleading simply omits, rather purports to correct or actually denies, facts

included in the original pleading.

Applying its own authority to take judicial notice of superceded pleadings in

comparable circumstances, our circuit ruled more than 50 years ago:

> . . . . The fact that the original petition was withdrawn and that these
> statements were eliminated in the amended cross-petition is imma-
> terial, for pleadings withdrawn or superseded by amended pleadings
> are admissions against the pleader in the action in which they were
> filed. 14  A.L.R. 65-72, and cases cited.  Assuming but not deciding
> that the city could not avail itself of these admissions since it did not
> introduce the original cross-petition in evidence (14  A.L.R. 89), we
> take judicial notice of them as part of the record.  *Bienville Water
> Supply Co. v. City of Mobile*, 186 U.S. 212, 217, 22 S.Ct. 820, 46 L.Ed.
> 1132; *DeBearn v. Safe Deposit & Trust Co., supra*.

Pennsylvania R. Co. v. City of Girard, 210 F.2d 437, 440-41 (C.A.6 1954).   Further,

as explained by the Seventh Circuit, it is clear that such judicial notice does not

operate to convert the motion being considered in to one for summary judgment.

> Despite the express language of Fed.R.Civ.P. 12(b), we recently
> held that "[t]he district court may also take judicial notice of matters of
> public record" without converting a 12(b)(6) motion into a motion for
> summary judgment. *United States v. Wood*, 925 F.2d 1580, 1582 (7th
> Cir.1991).  We are not alone. See *MGIC Indem. Corp. v. Weisman*, 803
> F.2d 500, 504 (9th Cir.1986) ("On a motion to dismiss, we may take
> judicial notice of matters of public record outside the pleadings.") (ci-
> tations omitted); *Pension Benefit Guar. Corp. v. White Consolidated
> Indus.*, 998 F.2d 1192, 1196-1197 (3rd Cir.1993), *cert. denied*, 510 U.S.
> 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994); *Allen v. Westpoint-Pep-
> perell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991) ("In determining the ade-
> quacy of a claim under Rule 12(b)(6), consideration is limited to the
> facts stated on the face of the complaint ... and to matters of which
> judicial notice may be taken.") (citation omitted); 5A Wright & Miller,
> *Federal Practice and Procedure* § 1357, at 299 (2d ed. 1990) ("In deter-
> mining whether to grant a Rule 12(b)(6) motion, the court primarily
> considers the allegations in the complaint, although matters of public
> record ... also may be taken into account.").  The district court properly

10

> considered the public court documents in deciding the defendants'
> motions to dismiss, thus we proceed to merits of the Hensons' claims.

Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir.1994); see also, New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir.2003)("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.").

Plaintiff Svete's First Claim for Relief based on alleged breech of contract fails because the two contracts, the Physician Retainer Agreements executed by the two Defendants (Doc. 22, Exhs. B-2 (Whitfield), B-3 (Wunderlicht)) plainly show that the other party is Medical Underwriting, Inc. without any mention of Svete whatever. Indeed, except for the signatories, the only reference to other persons or entities is not by name but by discription, and that is in the contracts' "Hold Harmless" provisions in ¶ 10, which Svete makes subject of his amended complaint's separate, Fifth (actually sixth) Claim for Relief and which is here analyzed separately, below.

"[A] contract is binding only upon parties to a contract and those in privity with them. *Am. Rock Mechanics, Inc. v. Thermex Energy Corp.* (1992), 80 Ohio App.3d 53, 58, 608 N.E.2d 830." Samadder v. DMF of Ohio, Inc., 154 Ohio App.3d 770, 778, 798 N.E.2d 1141, 1147. Svete can not successfully claim to be a party as such to the two agreement in question here. Rather, he claims to be a third-party beneficiary. In determining who is a third party beneficiary entitled to enforce duties of performance under a contract, Ohio has adopted the distinction between

11

intended and incidental beneficiaries found in Section 302 of the Restatement of the

Law 2d, Contracts (1981) 439-440. Hill v. Sonitrol of Southwestern Ohio, Inc., 36

Ohio St.3d 36, 40-41, 521 N.E.2d 780, 784 -785 (1988), As quoted by the Supreme

Court of Ohio, that section provided:

> "(1) Unless otherwise agreed between promisor and promisee, a bene-
> ficiary of a promise is an intended beneficiary if recognition of a right
> to performance in the beneficiary is appropriate to effectuate the in-
> tention of the parties and either
>   "(a) the performance of the promise will satisfy an obligation of the
> promisee to pay money to the beneficiary; or
>   "(b) the circumstances indicate that the promisee intends to give the
> beneficiary the benefit of the promised performance.
>
> "(2) An incidental beneficiary is a beneficiary who is not an intended
> beneficiary."

Further, the court notes that Comment e to Section 302 states: "Performance of a

contract will often benefit a third person. But unless the third person is an in-

tended beneficiary as here defined, no duty to him is created. * * * "

> It is well-settled that "[a]n incidental beneficiary under a con-
> tract to which he is not a party may not recover from the promisor."
> Visintine & Co. v. New York, Chicago & St. Louis RR. Co. (1959), 169
> Ohio St. 505, 507, 9 O.O.2d 4, 5, 160 N.E.2d 311, 313, citing St. Clair
> v. Williams (1836), 7 Ohio, Part II, 110; *42 Blunk v. Dennison Water
> Supply Co. (1905), 71 Ohio St. 250, 73 N.E. 210; Cleveland Window
> Glass & Door Co. v. National Surety Co. (1928), 118 Ohio St. 414, 161
> N.E. 280.

Hill at 41-42.

Based on the actual content of the two agreements in question here, the

Court can not find that Plaintiff Svete is an intended beneficiary entitled to enforce

either Defendant's performance. Not alone, but most importantly there is no indi-

cation that the two contracting doctors and MUI recognized a right to performance

12

in the Sevet as appropriate to effectuate their intention in making their agree-
ments.  Except insofar as he might fit into one of the descriptions of those named in
the specific hold harmless provision, Svete is not even referred to indirectly, and
whatever rights he might be able to claim under that provision, if anything, suggest
only that the parties contemplated no other or broader ones as part of their agree-
ments.  Paraphrasing the court's conclusion in Hill, because Plaintiff Svete was only
indirectly and incidentally benefitted by the contract between MUI and the Defen-
dant doctors, it follows that Svete has no right of action to enforce the Defendant
doctors' agreements with MUI against them. Ibid..

Svete's Second Claim (negligence) and Fourth Claim (breach of fiduciary and
trust duty) both fail to state a claim upon which he can recover, essentially because
those claims depend upon alleged mis-performance of Defendants' obligations under
their agreements with MUI.  As just explained above, Svete has no right of action
as a party or third-party beneficiary to proceed on that basis, and the Court agrees
with Defendants' reliance on the statement in  Ohio City Orthopedics, Inc. v. Med-
ical Billing And Receivables, Inc.  2003-Ohio-1881,  2003 WL 1869873, *4:  (Ohio
App. 8th Dist.)

> . . . . [I]t is well established in Ohio that it is not a tort to breach a con-
> tract. See, e.g., *Ketcham v. Miller* (1922), 104 Ohio St. 372, 136 N.E.
> 145.  Thus, there is no claim for the negligent performance of a con-
> tract. . .

Or, as explained more fully in Prater v. Three C Body Shop, Inc. (Ohio App. 10th
Dist.) 2002 WL 479827, *4:

> A breach of contract claim does not create a tort claim, and a tort claim

13

based upon the same actions as those upon which a breach of contract
claim is based exists only if the breaching party also breaches a duty
owed separately from that duty created by the contract, that is, a duty
owed even if no contract existed. *Textron Fin.Corp. v. Nationwide Mut.
Ins. Co.* (1996), 115 Ohio App.3d 137, 151, 684 N.E.2d 1261, discretion-
ary appeal not allowed in (1996), 78 Ohio St.3d 1425, 676 N.E.2d 531.
Further, there must be damages attributable to the wrongful acts
which are in addition to those attributable to the breach of contract.
*Id.*

As Defendants also point out, under Ohio law a claim for breach of fiduciary

duty is basically for negligence involving a "higher standard of care." Strock v.

Pressnell, 38 Ohio St.3d 207, 216, 527 N.E.2d 1235 (1988). ,"[T]he party asserting

such a breach must establish the existence of a fiduciary duty, a breach of that

duty, and an injury proximately resulting therefrom.' Hurst v. Enterprise Title

Agency, Inc., 157 Ohio App.3d 133, 144-145, 809 N.E.2d 689, 697 (2004) (quoting

Strock). Applying Ohio law applicable to insurance contracts, which includes an

obligation of fair dealing, the Sixth Circuit has explained:

> . . . . [A] tort exists only if a party breaches a duty which he owes to
> another independently of the contract, that is, a duty which would
> exist even if no contract existed. The tort liability of parties to a con-
> tract arises from the breach of some positive legal duty of good faith
> imposed by law because of the relationship of the parties, rather than
> from a mere omission to perform a contractual obligation. . . .

Wolfe v. Continental Cas. Co., 647 F.2d 705, 710 (6th Cir. 1981). Thus, Svete's

amended complaint fails to state either such claim based on the Defendants' agree-

ments with MUI

Furthermore, even if the amended complaint could be construed as stating

either of these as a viable tort claim, the same would clearly be barred by Ohio's

four-year statute of limitations contained in O.R.C. §2305.09(D). In his original

14

complaint, Svete identifies his founding of Lifetime Capital, Inc. as "1997" and his and LCI's purchase of "several hundred life insurance policies, at a discount from their face value," "from 1997 through 2000." Doc. 7, ¶¶ 8, 9. The original complaint further describes in considerable detail the nature of Svete's and LCI's conduct of a business he characterizes as "'viatical' or Lifetime Settlement Provider" involving, among others, receipt and reliance on "life expectancy letters" prepared and pro- vided to MUI/MUL by Defendants pursuant to their Physician Retainer Agree- ments. See Id., ¶¶ 10-61. The original complaint then further alleges that "in January, 2001, the management team walked out of LCI," after which a new pres- ident was appointed, after which LCI ceased conducting new business and cancelled pending policy transactions. Id. ¶¶ 63-69.

As explained above, after Defendants raised questions concerning the time- liness of Svete's original complaint, he sought and obtained leave to file his First Amended Complaint that is now before the Court, which, without changing the essential nature of the original's lengthy allegations, omits the above three dates that can be linked to the Defendant's performance under their contracts with MUI, Those contracts show they were executed on Dec. 26, 1997 and June 15, 1998, (Doc. 22, Exhs. B-2, B-3), and, based on Svete's original complaint, they last might have been relied on sometime prior to January, 2001 when LCI ceased purchasing insur- ance policies at a discount based on the doctors' life expectancy letters. Although omitting the original complaint's inclusion of dates indicating Svete's and LCI's business operations related to the Defendant doctors,.the amended complaint adds

15

new allegations claiming that Svete first discovered the Defendants' "material mis-

representations" in "January-February, 2005." Doc. 22, ¶¶ 82, ff.

> Under R.C. 2305.09, a cause of action for misrepresentation
> must be brought within four years after the misrepresentation was or
> should have been discovered. *Investors REIT One v. Jacobs* (1989), 46
> Ohio St.3d 176, 546 N.E.2d 206; *Venham v. Astrolite Alloys* (1991), 73
> Ohio App.3d 90, 596 N.E.2d 585, motion to certify overruled (1991), 62
> Ohio St.3d 1422, 577 N.E.2d 1105
.

> No more than a reasonable opportunity to discover the mis-
> representation is required to start the period of limitations. Infor-
> mation sufficient to alert a reasonable person to the possibility of
> wrongdoing gives rise to a party's duty to inquire into the matter
> with due diligence. *Id.*; see *Flowers v. Walker* (1992), 63 Ohio St.3d
> 546, 589 N.E.2d 1284.

Craggett v. Adell Ins. Agency, 92 Ohio App.3d 443, 454, 635 N.E.2d 1326, 1333

(1993). In applying this rule in these circumstances, the Court at least reads the

allegations of Svete's amended complaint in light of relevant, uncorrected or con-

tradicted allegations of his own original complaint. Considering the relevant dates

of Svete's actions in reliance on Defendants' life expectancy letters to MUI, as con-

tained in the original complaint, together with the amended complaint's allegations

concerning the problems that developed with the insurance policies he and LCI

were dealing in based on alleged reliance on such letters, it is apparent Svete had

"information sufficient to alert a reasonable person to the possibility of [the} wrong-

doing" he now complains of well before February, 2003, the earliest date that would

permit his filing of tort claims under § 2305.09 limitations.

When Svete seeks to rely on the "January-February, 2005" date he allegedly

"discovered that the Defendants had made material admissions . . . that they had

16

made material misrepresentations" in their life expectancy letters as the basis for

beginning the applicable limitations period for his claims (Doc. 22, ¶¶ 82-91), he

misinterprets the discovery rule upon which he seeks to rely. Cf. <u>Blair v. Lucent</u>

<u>Technologies Inc.</u>, No. 2:06-cv-450, 2007 WL 869715, at *9 (S.D.Ohio March 20,

2007) ("Plaintiffs have misinterpreted the discovery rule and are essentially urging

this Court to give Plaintiffs time to discover enough facts to warrant a 'legally sus-

tainable' action before the statute of limitation begins to run. However, this is the

purpose of the discovery phase of litigation, which begins after a complaint is filed.")

(cited in <u>Neff v. Standard Federal Bank</u>, No. 2:06-cv-856, 2007 WL 2874794, *5

(S.D. Ohio 2007)).

Svete's Third Claim for Relief (Negligent Misrepresentation) is also clearly

barred by the applicable period of limitations contained in § 2305.09(D). As also

explained in <u>Neff</u>:

> . . . . Claims of negligent misrepresentation do not receive the benefit
> of the discovery rule. While § 2305.09 expressly makes the discovery
> rule available for claims of fraud, negligent misrepresentation is not
> listed in the statute as one of the causes of action for which the dis-
> covery rule is available. Ohio courts have therefore held that the dis-
> covery rule does not extend to claims for negligent misrepresentation.
> *See Orshoski v. Krieger*, No. OT-01-009, 2001 WL 1388037, at *6 (Ohio
> Ct.App. Nov. 9, 2001); *Chandler v. Schriml*, No. 99AP-1006, 2000 WL
> 675123, at *3 (Ohio Ct.App. May 25, 2000) ("R.C. 2305.09 has not ex-
> tended the 'discovery rule' to toll the statute of limitations in negligent
> misrepresentation cases."). Because the cause of action for negligent
> misrepresentation accrued in November 2001 and Neff did not file his
> claim until October 12, 2006, his negligent misrepresentation claim
> must be dismissed.

2007 WL 2874794, *6. Plaintiff's claim against the Defendant doctors is, in effect,

for professional negligence in connection with preparation of their life expectancy

17

letters.  The period of limitations provided in § 2305.09 for that cause of action

begins to run when the allegedly negligent act is committed, rather than when its

damage is discovered.  See Hater v. Gradison Div. Of McDonald & Co. Securities,

Inc., 101 O. App.3d 99, 655 N.E.2d 189 (1995) (citing, inter alia, Investors REIT

One v. Jacobs,, 46 Ohio St.3d 176, 546 N.E.2d at 212).  Here, the allegedly negligent

misrepresentations occurred, if they did, in Defendants' life expectancy letters, the

last of which, according to the original complaint, cannot have been executed later

than the year 2000.  Because Plaintiff did not first seek to file this case until Feb-

ruary, 2007. any negligent misrepresentation claims are thus barred.

Although Plaintiff Svete's Fifth Claim for Relief, entitled Unfair and Decep-

tive Trade Practices (Doc 22, ¶¶ 195-201), does not expressly refer to Ohio's Con-

sumer Sales Practices Act (Ohio Revised Code (O.R.C.) §§ 1345.01, et seq.) that is

the law to which his claim is clearly directed, and he concedes as much in argument

(see Doc. 87, ¶ 56), it is apparent that he has not stated a claim upon which he can

proceed under that law.  As discussed above, the provisions of the of the contracts

(the Physician Retainer Agreements) that are the basis of all Svete's claims against

these Defendants are before the Court as Exhibits B-2 and B-3 to his amended com-

plaint, and their terms do not provide a basis for any claim by him under the Ohio

Act, which applies only to consumer transactions.

As defined in O.R.C. § 1345.01(A)::

> Consumer transaction' means a sale, lease, assignment, award by
> chance, or other transfer of an item of goods, a service, franchise, or
> an intangible, except those transactions between persons, defined in
> sections 4905.03 and 5725.01 of the Revised Code, and their customers,

or between attorneys or physicians and their clients or patients,to an individual for purposes that are primarily personal, family, or house-hold, or solicitation to supply any of these things.

Thus, in order to come within the protection of the Act, a "plaintiff must demon-strate that, at the time of the incident in question, it was an "individual" and was engaged in an activity, the purpose of which was "primarily personal, family or household." Toledo Metro Federal Credit Union v. Ted Papenhagen Oldsmobile, Inc. 56 Ohio App.2d 218, 20, 381 N.E.2d 1337 (Ohio App.,1978).

Svete is an "individual," but according to what is before the Court on his pleadings, MUI, the entity that actually contracted with Defendants, is not, and the activity covered by the agreements made by the two Defendants is not "primarily personal, family or household." Even under the most liberal reading, Svete's amended complaint fails to state a claim under Ohio's Consumer Sales Practices Act.

Svete's second "Fifth Claim for Relief" based on the "Hold Harmless" pro-visions of paragraph 10 of the Defendant's Physician Retainer Agreements cannot be dismissed on Defendant's motions and what the Court may properly consider at this time. That contract paragraph agrees on behalf of the two physicians to "in-demnify and hold harmless" MUI and a number of related individuals and entities, some of which (e.g., "consultants") Svete has or can claim to be (Doc. 22, ¶¶ 19, 20) from "liability, claims, damage and expense" incurred as a result the contracting physician's acts of neglect or omission. Doc. 22, Exhs. B-2 and B-3, ¶ 10. In light of Svete's criminal conviction related to his activities involving LCI and MUI/MUL,

19

there may be considerable doubt about his ability to recover upon claims so based, but at this point, the Court can not find it beyond doubt there is no set of facts he might prove in support of a claim here that would entitle him to some relief. The claim, therefore, cannot be dismissed on Defendants' present motions.

Plaintiff's final Claim for Relief seeks an injunction essentially to freeze assets of the Defendants that Plaintiff might claim as the result of his successfully proceeding on claims in this case and that remain as the result his "opting out" of a separate class action brought by LCI's receiver against Defendants in federal court in Dayton, Ohio.[11] Thus, the claim is dependant on as yet unestablished rights and is therefore, not ripe for ruling at this time. However, because one of Plaintiff's damages claims remains herein, this claim remains pending as well.

Consistent with the foregoing, Defendants' Motions To Dismiss (Docs. 38 and 60) are GRANTED to the extent that Plaintiff's claims for 1) breach of contract; 2) negligence; 3) negligent misrepresentation; 4) breach of fiduciary duty and trust duty; 5) unfair and deceptive trade practices are DISMISSED as to each Defendant for failure to state a claim upon which relief can be granted. Plaintiff's First Amended Complaint (Doc. 22) remains pending on his claims for 6) enforcement of indemnification and hold harmless agreements; and 7) injunctive relief.

SO ORDERED.

_9 - 30 - 2008_
Date

Edmund A. Sargus, Jr.
United States District Judge

---

11. See Moran v. Wunderlich,, S.D. Ohio No. 3:05- CV-073.