**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**


**DAVID W. SVETE,**

        **Plaintiff,**

    vs.                                **Civil Action 2:07-CV-156
Judge Sargus
Magistrate Judge King**

**MD HOWARD F. WUNDERLICH,
*et al.*,**
        **Defendants.**


<u>**OPINION AND ORDER**</u>

Plaintiff, a federal prisoner incarcerated in Ohio who is proceeding without the assistance of counsel, asserts claims for enforcement of certain agreements against defendants, two physicians.[1] This matter is now before the Court on *Defendant, Howard F. Wunderlich, M.D.'s Motion to Transfer for Improper Venue*, Doc. No. 109 ("*Defendant Wunderlich's Motion to Transfer*") and *Plaintiff David W. Svete's Motion to Enforce Forum-Selection Clause Governing Hold-Harmless Agreements, and to Transfer Instant Action to the United States District Court for the District of Nevada*, Doc. No. 136 ("*Plaintiff's Motion to Transfer*"). For the reasons set forth below, the *Defendant Wunderlich's Motion to Transfer* is **GRANTED** and *Plaintiff's Motion to Transfer* is **DENIED**.

**I.    BACKGROUND**

Plaintiff alleges that a company that he founded, LifeTime Capital, Inc. ("LCI"), purchased "viatical" or "life settlement" life

---

[1]Defendant Isaac Corney, M.D., was dismissed from this action on February 20, 2008. *Order*, Doc. No. 63. Plaintiff's claims for breach of contract, negligence, negligent misrepresentation, breach of fiduciary duty and unfair trade practices were previously dismissed. *Order*, Doc. No. 95.

insurance policies.[2] *Plaintiff David W. Svete's First Amended Complaint for Damages / Request for Injunctive Relief*, ¶¶ 9-10, Doc. No. 22 ("*First Am. Compl.*"). Plaintiff alleges that he assisted in establishing, and acted as a consultant for, Medical Underwriting, Inc. ("MUI"), which handled the medical underwriting process for LCI and acted as a liaison between LCI and medical experts who calculated the reasonable life expectancy of the insureds or "viators." *Id*. at ¶¶ 15-16, 19. Later, MUI was replaced by Medical Underwriting, LLC ("MUL"), for which plaintiff was also a consultant and employee/officer. *Id*. at 18-20.

According to plaintiff, MUI/MUL entered into written contracts, entitled "Physician Retainer Agreement," with each defendant physician, who agreed to review medical records for a flat monthly fee. *Id*. at ¶ 21 and Exhibits B-2 and B-3, attached thereto. Plaintiff alleges that he is a third-party beneficiary of the Physician Retainer Agreements because of his consulting relationship

---

[2]
A viatical settlement, by which a dying person is able to acquire provisions for the remainder of his life's journey by selling his life insurance policy, is thus thought to provide a viaticum. In the language of the industry, the insured is the "viator," who sells his policy at a discount to a "provider" of the viaticum. The viatical settlement provider is often backed by investors under arrangements reached between the provider and the investors. Once a viator sells a policy to a provider, the provider assumes the responsibility for paying the premiums and designates itself as the beneficiary of the policy. Upon the viator's death, the provider collects the face value of the policy, and the provider's profit is the difference between the face value of the policy and the amount paid to the viator, premiums paid to the insurance company, and the administrative expenses incurred. Because the sooner the viator dies the greater the provider's profit, a provider takes special care in calculating a viator's life expectancy by hiring an independent doctor to examine the insured and his medical records and by monitoring the viator's health until death.

*Life Partners., Inc. v. Morrison*, 484 F.3d 284, 287 (4th Cir. 2007).

with MUI/MUL.  *First Am. Compl.*, ¶¶ 22-25.

This action was filed on April 4, 2007.  *Complaint for Damages/ Request for Injunctive Relief*, Doc. No. 7.  Thereafter, plaintiff filed the *First Amended Complaint*, which alleges that the Court has jurisdiction over this action based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).  *First Am. Compl.*, ¶ 1.  More specifically, plaintiff alleges that he is a resident of Texas and that defendant Wunderlich "is a physician in Ohio" and that defendant Whitfield "is a physician in Lousiana."  *Id*. at ¶¶ 2-3, 5.  The *First Amended Complaint* further alleges that "[a] substantial part of the events and omissions giving rise to the claims occurred in the Southern District of Ohio."  *Id*. at ¶ 6.

Plaintiff, citing the Physician Retainer Agreements, now moves to transfer this action to Nevada.  *Plaintiff's Motion to Transfer*.  Defendants oppose a transfer to Nevada and defendant Wunderlich argues that this case should be transferred to the Western Division of this Court, at Dayton.  *Defendant Wunderlich's Motion to Transfer*.  The Court shall address each motion in turn.

**II.  STANDARD**

    **A.  28 U.S.C. § 1404(a)**

Section 1404(a) authorizes the transfer of a civil action properly venued in one district to another district or division.

> For the convenience of parties and witnesses, in the
> interest of justice, a district court may transfer any civil
> action to any other district of division where it might have
> been brought.

28 U.S.C. § 1404(a).  The party seeking transfer under 28 U.S.C. § 1404 bears the burden of establishing that the balance of relevant

3

factors weighs "strongly in favor of transfer." *Centerville ALF v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1049 (S.D. Ohio 2002)(quoting *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951)). Ultimately, however, the decision whether to transfer venue is committed to the sound discretion of the trial court. *Midwest Motor Supply Co. Inc. v. Kimball*, 761 F. Supp. 1316, 1318 (S.D. Ohio 1991).

"In ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including witnesses, as well as other public interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Centerville ALF, Inc.*, 197 F. Supp. 2d at 1049 (quoting *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)). While there is no definitive list of factors that must be considered in determining whether a change of venue is warranted and to what district or division the action should properly be transferred, a district court may consider a number of case-specific factors. *Id*. Private interest factors include:

> The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947). Public interest factors include docket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law. *Id*.

**B.    28 U.S.C. § 1404(b)**

4

Section 1404(b) authorizes, upon motion and in the exercise of the court's discretion, the transfer of a civil action from one division to another division in the same district.

> Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district. . . .

28 U.S.C. § 1404(b).

Intradistrict transfers pursuant to 28 U.S.C. § 1404(b) "are discretionary transfers subject to the same analysis as under § 1404(a) but apparently judged by a less rigorous standard." *Hanning v. New England Mut. Life Ins. Co.*, 710 F. Supp. 213, 215 (S.D. Ohio 1989) (citing *Johnson v. Burlington-Northern, Inc.*, 480 F. Supp. 259, 260 (W.D. Mo. 1979)).

**III. DISCUSSION**

    A.    *Plaintiff's Motion to Transfer*

        1.    Positions of the parties

Plaintiff argues that the Physician Retainer Agreements, which provide the basis for his remaining claims, contain enforceable forum selection clauses that provide for proper venue in Nevada and preclude venue objections from defendants. *Plaintiff's Motion to Transfer* (citing Physician Retainer Agreements, ¶¶ 10, 15 and 20, attached thereto as Exhibits 1 and 2). These agreements provide, in pertinent part, as follows:

> **10. Hold Harmless**
> The Physician [each defendant] agrees to indemnify and hold harmless Medical Underwriting, Inc., its officers, employees, consultants, subsidiaries and/or affiliates and all their respective officers, directors, agents and their employees, from and against any and all liability, claims,

5

>   damage and expense, of any nature whatsoever, contingent or
>   otherwise, which are incurred against them as a result of
>   any and all acts of neglect and/or omissions by Physicians.
>
>   \*           \*           \*           \*
>
>   **15.  Applicable Law**
>   This Agreement shall be interpreted, enforced and governed
>   by the laws of the State of Nevada, U.S.A., and the proper
>   venue to resolve any dispute under this Agreement shall be
>   in the State of Nevada, U.S.A.
>
>   \*           \*           \*           \*
>
>   **20.  Governing Law and Venue**
>   The laws of the State of Nevada shall govern this Agreement.
>   Physician agrees that Medical Underwriting, Inc. may
>   institute any action or legal proceeding against Physician
>   arising out of or relating to this agreement in any state or
>   federal court of jurisdiction in the U.S.A.  Physician
>   irrevocably submits to the jurisdiction or venue of such
>   court.

Exhibits 1 and 2, attached to *Plaintiff's Motion to Transfer*.

In response, Defendant Whitfield argues that *Plaintiff's Motion to Transfer* should be denied for two reasons.  Doc. No. 139.  He contends, first, that as a non-party or signatory to the Physician Retainer Agreements, plaintiff cannot assert any rights, including venue provisions, contained in these agreements and, second, it was plaintiff who chose to litigate this matter in the Southern District of Ohio.  *Id*.  Defendant Whitfield also argues that plaintiff's request to transfer should be denied because plaintiff, who is currently incarcerated in Ohio, would be unavailable in Nevada.  *Id*.  Defendant Wunderlich adopts and incorporates Defendant Whitfield's argument and further adopts and incorporates the arguments raised in *Defendant Wunderlich's Motion to Transfer*.  Doc. No. 140.[3]

---

[3]The arguments raised in *Defendant Wunderlich's Motion to Transfer* are addressed *infra*.

6

In reply, plaintiff argues that, as a third-party beneficiary to the agreements, he has a right to enforce provisions of the Physician Retainer Agreements. Doc. No. 148, pp. 1-4. He contends that Nevada is the proper venue for resolving "any dispute." *Id*. (citing ¶ 15 of the Physician Retainer Agreements). Plaintiff further argues that it is no less convenient for this action to proceed in Nevada. *Id*. at 5. Plaintiff also adopts and incorporates his arguments opposing *Defendant Wunderlich's Motion to Transfer*. Doc. No. 149 (attaching *Plaintiff David W. Svete's Sur-Reply to Defendant, Howard F. Wunderlich, M.D.'s Reply Memorandum in Support of His Motion to Transfer for Improper Venue [Doc. #109]*, Doc. No. 137 ("*Plaintiff's Sur-Reply*").

### 2. Analysis

As an initial matter, the Court notes that it is somewhat unusual for a plaintiff, who selected the venue in the first place, to seek to change venue approximately two years after he filed the action.[4] *Cf. Cox v. Ashcroft*, No. CV-F-05-149, 2008 U.S. Dist. LEXIS 23404, at *4 (E.D. Cal. Mar. 25, 2008). Nevertheless, the Court will consider *Plaintiff's Motion to Transfer*. *See Thomas v. Exxon Mobil Oil Corp.*, NO.: 2:06-CV-144, 2007 U.S. Dist. LEXIS 9689, at *22 n.6 (N.D. Ind. Feb. 8, 2007).

Plaintiff's primary argument is that, as a third-party

---

[4]Plaintiff argues that he did not have possession of the Physician Retainer Agreements when he filed the action on April 4, 2007, and that by the time he obtained copies, Defendant Wunderlich "had already conceeded [sic] to the jurisdiction and venue of this Court[.]" *Plaintiff's Sur-Reply*, p. 17. Plaintiff's argument as to Defendant Wunderlich's waiver is addressed *infra*, but the Court notes that plaintiff had obtained copies of the Physician Retainer Agreements by September 13, 2007, *First Am. Compl.*, more than a year before he filed his current motion.

7

beneficiary to the agreements, he is entitled to enforce the forum selection clauses contained in the Physician Retainer Agreements that specify Nevada as the proper venue. Plaintiff apparently bases this argument on his belief that the Court, when ruling on a motion to dismiss the *First Amended Complaint*, "has already addressed the hold harmless claim, and has ruled that it shall proceed" and "that non-signatories have the right to enforce contracts, in particular, the Agreement in issue here." Doc. No. 148, pp. 2-3. However, plaintiff misstates the Court's prior ruling. *See Opinion and Order*, Doc. No. 95, pp. 19-20. Instead, the Court specifically concluded that, while the remaining claims may proceed, plaintiff's rights were not yet established:

> [T]here may be considerable doubt about his [plaintiff's] ability to recover upon claims so based [on enforcement of provisions of the Physician Retainer Agreements], but at this point, the Court can not find beyond doubt there is no set of facts he might prove in support of a claim here that would entitle him to so relief. The claim [asking for enforcement of the hold harmless provision], therefore, cannot be dismissed on Defendants' present motions. Plaintiff's final Claim for Relief seeks an injunction to freeze assets of the Defendants that Plaintiff might claim as the result of his successfully proceeding on claims in this case. . . . Thus, the claim is dependent on as yet unestablished rights and is therefore, not ripe for ruling at this time.

*Id*. at 20. Accordingly, based on the present record, it is not clear whether plaintiff possesses any enforceable rights under the Physician Retainer Agreements.

Nevertheless, even if plaintiff enjoys the right to invoke the forum selection clauses contained within the Physician Retainer Agreements, "whether the forum-selection clause should be given effect [i]s governed by federal law, specifically 28 U.S.C. § 1404(a)."

*Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 534 (6th Cir. 2002) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)). Under a §1404(a) analysis, the clause is a significant factor, but "should receive neither dispositive consideration . . . nor no consideration . . . but rather the consideration for which Congress provided in § 1404(a)." *Stewart Org., Inc.*, 487 U.S. at 29, 31.

Defendant Whitfield argues that proper consideration of the § 1404(a) factors militates against transfer of this action to Nevada. Doc. No. 139, p. 2. This Court agrees. First, the convenience of the parties is best served by maintaining this action in the Southern District of Ohio. Defendant Wunderlich resides in this district. *See* Doc. Nos. 9, 13. In addition, plaintiff is currently incarcerated in Ohio. Conversely, none of the parties are located in Nevada.

Second, plaintiff does not allege that any witnesses or evidence might be found in Nevada. Instead, plaintiff has already alleged that "[a] substantial part of the events and omissions giving rise to the claims occurred in the Southern District Of Ohio." *First Am. Compl.*, ¶ 6. By plaintiff's own allegations, the ease of access to witnesses and sources of proof is likely greater in Ohio than in Nevada.

Third, considering that plaintiff filed the action in the Southern District of Ohio, defendants will suffer unfair prejudice should the matter now be transferred to Nevada. Defendants are currently represented by Ohio counsel. *See*, *e.g.*, Doc. Nos. 96, 97. Should the action be transferred as requested by plaintiff, defendants would incur additional costs resulting either from their counsel's travel to Nevada and/or their retention of new counsel unfamiliar with the case. Conversely, there is no evidence that plaintiff will suffer

9

any prejudice if the case is not transferred to Nevada. Having chosen this forum in the first place and representing that he is available for trial "regardless of what state it is in or the Plaintiff is in[,]" Doc. No. 148, p. 5, plaintiff has established that he will incur no resulting prejudice if the action remains in Ohio.

Fourth, the public interest factors weigh in favor against transfer to Nevada. Having admitted that a "substantial part of the events and omissions giving rise to the claims occurred in the Southern District of Ohio," *First Am. Compl.*, ¶ 6, plaintiff implicitly concedes that the Southern District of Ohio has an interest in holding trial in the community where the public affected live.

Finally, the timing of *Plaintiff's Motion to Transfer* suggests that plaintiff is, at best, careless and, at worst, engaged in forum shopping. His motion was filed approximately two years after the initial filing of the action and only after Defendant Wunderlich filed a motion to transfer the action to the Western Division, at Dayton.[5] In addition, plaintiff waited more than four months after the Court specifically directed the parties to address questions of venue. *See Order*, Doc. No. 105.[6]

Under these circumstances, the Court, in its discretion,

---

[5] The Court notes that plaintiff, a current and former litigant in the Western Division, appears to be well-acquainted with that court. *See*, *e.g.*, *Svete v. Cherneskey Heyman & Kress, P.L.L.*, Case No. 3:07-cv-197; *Moran v. Svete*, Case No. 3:05-cv-72.

[6] Although the *Order* specifically addressed the issue of venue in the Western Division of this Court, at Dayton, plaintiff filed no motion addressing venue until months after that *Order* was issued. To the extent that plaintiff may argue that he did not have copies of the Physician Retainer Agreements at the time this litigation was instituted is irrelevant, particularly because plaintiff had obtained copies of these agreements by September 13, 2007, well before the Court issued its *Order*. *First Am. Compl.*

concludes that the interests of justice do not warrant the requested transfer of the action to Nevada.

     **B.** *Defendant Wunderlich's Motion to Transfer*

          **1.   Positions of the parties**

Defendant Wunderlich, invoking 28 U.S.C. § 1404(b), argues that venue in this district is improper because at least one defendant, defendant Wunderlich, resides in Montgomery County, Ohio. *Defendant Wunderlich's Motion to Transfer*, p. 2. He contends that the Local Rules of this Court require that this action be transferred to the Western Division, at Dayton. *Id.* at 2-3 (citing S.D. Ohio Civ. R. 82.1(b),(c)).

In response, plaintiff argues that defendant Wunderlich has waived any right to object to venue in this division and that a § 1404 analysis favors the plaintiff's choice of forum. *Plaintiff David W. Svete's Response in Opposition to Defendant, Howard F. Wunderlich, M.D.'s Motion to Transfer for Improper Venue*, Doc. No. 116 ("*Plaintiff's Opposition*"); *Plaintiff's Sur-Reply*.

Defendant Wunderlich denies that he waived his right to object to venue in this division. *Defendant, Howard F. Wunderlich, M.D.'s Reply Memorandum in Support of His Motion to Transfer for Improper Venue*, Doc. No. 127, 2-3 (citing Fed. R. Civ. P. 12(h)(1), and points to his answers to the original complaint and to the *First Amended Complaint* and to this Court's *Order*, Doc. No. 105, soliciting the parties' positions on the issue of venue.[7]

---

[7]The parties' additional arguments relating to whether or not plaintiff may enforce provisions under the Physician Retainer Agreements, *i.e.*, the forum selection clauses, were addressed *supra* and will not be revisited here.

**2. Analysis**

As an initial matter, the Court rejects plaintiff's contention that Defendant Wunderlich waived his objection to venue in this division. As discussed *supra*, on November 26, 2008, the Court issued a pretrial schedule and specifically instructed the parties to file a motion to transfer if any party believed that the action is appropriately venued in the Western Division of this Court, at Dayton. *Order*, Doc. No. 105. Defendant Wunderlich, having previously moved to transfer venue, Doc. No. 55,[8] promptly filed the current motion within two weeks of the Court's *Order*. Accordingly, plaintiff's waiver argument is without merit.

This Court's local rules require that "[a]n action against a defendant or defendants resident in this district shall be filed at the location of court which embraces a county in which at least one defendant resides." S.D. Ohio Civ. R. 82.1(c). *See also GCG Austin, Ltd. v. City of Springsboro, Ohio*, 284 F. Supp.2d 927 (S.D. Ohio 2003) (transferring action pursuant to S.D. Civ. R. 82.1(c)). Here, no defendant resides in a county served by the Eastern Division of this Court. Defendant Whitfield resides in Baton Rouge, Louisiana. *See First Am. Compl.*, ¶ 5; Doc. No. 12. Defendant Wunderlich resides in Dayton, Ohio. *First Am. Compl.*, ¶ 3; *see also Defendant Wunderlich's Motion to Transfer*, p. 3 (citing Doc. Nos. 1, 3, 9). Dayton is located in Montgomery County, Ohio. The Western Division, at Dayton, serves Montgomery County. *See* S.D. Civ. R. 82.1(b).

---

[8]This motion was denied as moot on April 2, 2008 because it was also filed on behalf of a defendant who had previously been dismissed from the case. *Order*, Doc. No. 65.

Accordingly, the Court concludes that this action is properly venued in the Western Division of this Court, at Dayton, because defendant Wunderlich is a resident of Montgomery County and no defendant is a resident of a county served by the Eastern Division. Therefore, this action must be transferred to the Western Division, at Dayton.  S.D. Civ. R. 82.1(c); *GCG Austin, Ltd.*, 284 F. Supp.2d at 931.

**WHEREUPON**, *Defendant, Howard F. Wunderlich, M.D.'s Motion to Transfer for Improper Venue*, Doc. No. 109, is **GRANTED** and *Plaintiff David W. Svete's Motion to Enforce Forum-Selection Clause Governing Hold-Harmless Agreements, and to Transfer Instant Action to the United States District Court for the District of Nevada*, Doc. No. 136, is **DENIED**.

Accordingly, this action is hereby **ORDERED TRANSFERRED** to the Western Division of this Court, at Dayton.


September 15, 2009                     *s/Norah McCann King*
                                        Norah McCann King
                                  United States Magistrate Judge